(No. 83-CV-0536— <span style="color:black"></span>)

*In re* APPLICATION OF FREDERICK DYMON

*Order filed September 25, 1985.*
*Order filed October 16, 1992.*

JONAH ROSEBERG, for Claimant.

NEIL F. HARTIGAN and ROLAND W. BURRIS, Attorneys General (ALISON P. BRESLAUER and JAMES MAHER III, Assistant Attorneys General, of counsel), for Respondent.

ORDER

POCH, J.

This claim arises out of an incident that occurred on December 13, 1981. Frederick Dymon, Claimant, seeks

compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. Ill. Rev. Stat. 1979, ch. 70, par. 71 *et seq.*

This Court has carefully considered the application for benefits submitted on December 13, 1982, on the form prescribed by the Attorney General, and an investigatory report of the Attorney General of Illinois. Based upon these documents and other evidence submitted to the Court, the Court finds:

1. That on December 13, 1981, the Claimant was stabbed by an unknown offender. The incident occurred in an apartment located at 1512 West Huron, Chicago, Illinois. Police investigation revealed that prior to the incident, the Claimant and the offender were involved in a verbal dispute. During this dispute, the offender produced a handgun and a knife. The Claimant attempted to grab the handgun from the offender but was stabbed in the wrist and forearm. The Claimant was taken to Saint Mary of Nazareth Hospital for treatment of his injuries. On January 17, 1982, the Claimant was contacted by investigators from the Chicago Police Department who were seeking information regarding this incident. The Claimant refused to cooperate with the police in their investigation. The Claimant did agree that he had been injured but refused to identify anyone as his assailant or comment further on the incident. As a result the police classified this incident as unfounded.

2. That sections 76.1(c) and (d) of the Act states that a person is entitled to compensation under the Act if the appropriate law enforcement officials were notified of the perpetration of the crime and the applicant has cooperated fully with law enforcement officials in the apprehension and prosecution of the assailant.

3. That it appears from the police report that the Claimant declined to cooperate fully with law enforcement officials in the apprehension of the assailant, in that he refused to identify his assailant or cooperate in any way with the follow-up police investigation.

4. That by reason of the Claimant's refusal to fully cooperate with law enforcement officials in the apprehension and prosecution of the assailant as required by the Act, he is not eligible for compensation thereunder.

It is hereby ordered that this claim be, and is hereby denied.

## OPINION

PATCHETT, J.

Claimant, Frederick Dymon, filed an application with this Court seeking compensation under the Illinois Crime Victims Compensation Act for injuries he sustained as a victim of a violent crime on December 13, 1981.

An order was entered by this Court on September 25, 1985, denying this claim based upon the failure of the Claimant to cooperate fully with law enforcement officials in the apprehension and prosecution of his assailant, as required by section 76.1(c) of the Act. Claimant's attorney advised this Court in writing that the Claimant wished a hearing on the matter.

The sole issue in this case involves whether the Claimant cooperated fully with law enforcement officials.

An evidentiary hearing was conducted before a commissioner of this Court on January 26, 1987. The evidence showed that the Claimant was a victim of a violent crime on December 13, 1981, as defined by the Act.

Police were summoned to the scene, and the victim was transported to St. Mary's Hospital. The Claimant testified at the hearing that the police only substantially attempted to speak to him one time, and that was at 3:00 a.m. on the day of the incident. He further testified that he had attempted to cooperate with the police, and did so by telling the police what happened to the best of his ability.

The Respondent offered the testimony of Detective Harrington, who was assigned to the case. He testified that he went to the home of the victim and attempted to question the Claimant. It became clear that the Claimant, who was present, did not speak English. A woman who identified herself as the Claimant's daughter was present. She acted as an interpreter. Detective Harrington further testified that he told the woman the purpose of his visit. At all times relevant to this conversation, the Claimant was present and able to cooperate. Detective Harrington testified unequivocally that the Claimant refused to identify his attacker or to cooperate in any way with the investigation. The Claimant stated that he did not want to have any contact with the police. The conversation ended, and a follow-up report was prepared.

In rebuttal to Detective Harrington's testimony, the Claimant testified that he had no daughter living in the United States at the time of the incident. The Claimant also testified that he had never seen Detective Harrington prior to the date of the hearing.

Obviously this case hinges on the credibility of the parties involved. It is reasonable to believe that Detective Harrington did not fabricate the incident. It is reasonable to believe that the conversation did take place as testified to by Detective Harrington. There is absolutely no reason to believe that the Claimant at any time had any difficulty

understanding English, or required an interpreter. Had the Claimant offered the testimony of any witness who could have testified to his living arrangements at the time, his testimony might have been more credible. In weighing the testimony of the two individuals who testified, this Court can only conclude that Detective Harrington acted reasonably at all times and that his testimony is credible. Therefore, we deny this claim.